UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN JONES,
                                                Plaintiff,

    v.                                                        1:07-CV-309 (VEB)

COMMISSIONER OF SOCIAL SECURITY,
                                              Defendant.
_____

## Introduction

    1.      This matter has been referred to the undersigned for all further proceedings, including the entry of judgment pursuant to 28 U.S.C. § 636(c), the consent of the parties, and the order of Chief United States District Judge Norman A. Mordue dated April 23, 2008. (Dkt. No. 14; *see* Dkt. No. 13). Plaintiff claims that (1) The ALJ failed to follow the treating physician rule, (Brief, pp. 7-10) and (2) The ALJ erroneously evaluated Plaintiff's credibility. (Brief, pp. 5-7). The defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.

## Procedural History

    2.      Plaintiff protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") on October 5, 2004, alleging a disability onset date of January 1, 2002. (Administrative Transcript ("T") at 45-48, 261-63). The application was denied initially and a request was made for a hearing. (T. 22-28). A hearing was held before an Administrative Law Judge ("ALJ") on May 5, 2006. *Id.* at 264-84. In a decision dated July 27, 2006, the ALJ found that Plaintiff was not disabled. *Id.* at 10-19. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 16, 2007. *Id.* at 2-3.

## Discussion

### Legal Standard and Scope of Review:

3.    To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work active-ties. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gain-ful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

4.    While the claimant has the burden of proof as to the first four steps, the

2

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

5.	In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

6.	A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

7.	"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

8.  In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2006; (2) Plaintiff has not engaged in substantial gainful activity since January 1, 2002, the alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), and 416.971 *et seq.*); (3) Plaintiff has the following severe impairments: a low back and neck disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)); (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.925, and 416.926); (5) After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to lift and carry a maximum of 20 pounds at a time, with the frequent lifting and carrying of objects weighing up to 10 pounds; stand or walk for up to 6 hours in an 8-hour workday; sit for up to 6 hours in an 8-hour workday; push or pull arm or leg controls some of the time; and use the arms and hands to grasp, hold and turn objects; (6) Plaintiff is capable of performing past relevant work as an assistant with pre-school children, as he described it in his Work History Report (Exhibit 3E), which required him to lift and carry less than 10 pounds; stand and walk for 2 hours in an 8-hour workday; and sit for 5 hours in an 8-hour workday with occasional climbing.  Plaintiff is also capable of performing his job as a cook, as he described it in

his Work History Report (Exhibit 3D), which required him to left and carry less than 10 pounds, stand for 5 hours in an 8-hour workday, and sit for 2 hours in an 8-hour workday.  This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965); and (7) Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 1, 2002, through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416-920(f)).  Ultimately, the ALJ determined Plaintiff was not entitled to a period of disability and disability insurance benefits, as set forth in sections 216(i) and 223(d) of the Social Security Act (R. at 14-19).

**Plaintiff's Allegations**

9. Plaintiff claims that (1) the ALJ failed to follow the treating physician rule. (Brief, pp. 7-10), and (2) the ALJ erroneously evaluated plaintiff's credibility. (Brief, pp. 5-7).  The defendant in turn, argues that the Commissioner's determination is supported by substantial evidence in the record.10. Plaintiff, who was forty years-old at the time of the ALJ's hearing, completed the eleventh grade and a general equivalency diploma ("GED").  (T. 269).  Plaintiff has past relevant work experience as a cook, baggage handler, teacher's assistant, and mail room clerk. *Id.* at 270-71.  Plaintiff alleges disability due to back and neck pain. *Id.* at 270-71, 278.

10. Plaintiff testified that his neck pain occurs every day and ranges from a sharp pain to a dull ache. *Id.* at 278.  He testified that his back pain radiates down his back and legs. *Id.* at 271.  He stated that he has a "constant tingling feeling" in his left arm. *Id.* at 278-79.  With regard to his daily activities, plaintiff testified that he is able to make small meals, but unable to grocery shop, do laundry, or vacuum. *Id.* at 276-77.  He watches television and attempts to do the exercises prescribed by his physician. *Id.* at 277.  When asked about his physical capabilities, plaintiff estimated that he could sit and walk for fifteen to twenty minutes at a time. *Id.* at 277.

Records from Northeast Orthopaedics indicate that Plaintiff participated in physical therapy

including range of motion and strengthening exercises during July and August of 2002. (T. 137). On August 30, 2002, Plaintiff's physical therapist reported that his physical therapy goals had been met and that Plaintiff would continue on his own with a home exercise program. *Id.* at 138. Plaintiff also underwent physical therapy at Albany Medical Center, from approximately July 2002 through early September 2002. *Id.* at 138-90. On September 2, 2002, Plaintiff "report[ed] general improvement." *Id.* at 157.

An X-ray of Plaintiff's cervical spine, taken June 24, 2002, was essentially negative for abnormalities. *Id.* at 171. On July 8, 2002, Plaintiff was examined by Dr. Howard Snyder. *Id.* at 173. Plaintiff reported a right shoulder sprain after a fight the day before. *Id.* Upon examination, Plaintiff had a full range of motion of the neck with minimal discomfort, full range of motion of the legs and back, nontender back and full strength in all extremities, and a minimally tender right shoulder. *Id.* Dr. Snyder noted that an X-ray of the cervical spine was negative for sublaxation or fracture, and an X-ray of the right shoulder was unremarkable. *Id.* at 173-74. Motrin and Tylenol were prescribed for pain. *Id.* at 174.

Plaintiff treated with Dr. Arta Salma from approximately May 30, 2003 through December of 2005. *Id.* at 126-50. On May 30, 2003, Dr. Salma stated that Plaintiff could "work full time [with] limitations." *Id.* at 250. These limitations were not fully explained, but it was noted that Plaintiff had problems sitting and standing for prolonged periods of time because it hurt his back. *Id.* at 249. Dr. Salma saw Plaintiff again on July 21, 2003 because he needed a disability form filled out. She did not record any treatment notes at that time. *Id.*

On September 16, 2004, Dr. Salma noted that Plaintiff was still experiencing back pain, "but not a lot." *Id.* at 245. On December 1, 2004, Dr. Salma stated that Plaintiff could work full time, in an office-type job with limitations on lifting. *Id.* at 244. On July 18, 2005, Plaintiff reported that his back pain was a 10/10, and that he could sit and stand for ten to fifteen minutes at a time, and

6

could not bend. *Id.* at 235. On December 30, 2005, Plaintiff indicated that he could stand for two to five minutes at a time, sit for ten minutes at a time, lift five to ten pounds, bending was difficult, and he did little walking. *Id.* at 228. Dr. Salma noted that Plaintiff had "no acute problems." *Id.* at 229. In a check-off letter from Plaintiff's attorney dated December 30, 2005, Dr. Salma checked boxes indicated that Plaintiff had been under total disability while in her care and that this disability was permanent. *Id.* at 227.

Plaintiff was examined by Dr. Amelita Balagtas on November 11, 2004. (T. 195-98). Plaintiff reported that he saw to his own self-care, grooming, and dressing. *Id.* at 195. Upon physical examination, Plaintiff demonstrated a normal gait and heel-toe walk, and normal station. *Id.* at 196. He did not use an assistive device and required no help in changing or getting on and off the examination table. *Id.* He showed a full range of motion in the cervical spine, with no spasm; full range of motion of the upper extremities with full strength, and equal reflexes in the upper extremities. *Id.* Forward flexion of the lumbar spine was limited with tenderness over the lumbosacral spine. *Id.* Straight leg raising was negative bilaterally at 75 degrees on the right and 80 degrees on the left.[1] *Id.* Examination of the lower extremities was normal. *Id.* Dr. Balagtas opined that based on her examination, Plaintiff "would have some limitations in activities that require bending, lifting, prolonged sitting, and prolonged standing." *Id.* at 197. Dr. Balagtas added that a lumbosacral spine X-ray showed disc space narrowing at L5-6. *Id.*

An examination by Dr. Sheldon Staunton, dated April 27, 2005, noted that Plaintiff presented as "an exceptionally muscular trim and healthy appearing gentleman. He actually moves about in a fairly free and easy manner." *Id.* at 216. Dr. Staunton did note that Plaintiff appeared to

---

[1] The straight leg raise test ("SLR") is used to detect nerve root pressure, tension or irritation. A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees. A positive SLR is said to be the most important indication of nerve root pressure. Andersson and McNeill, Lumbar Spine Syndromes, 78-79 (Springer-Verlag Wein, 1989).

be in some discomfort. *Id.* He found that Plaintiff exhibited a full range of motion of the lower back; negative straight leg raising test; and normal gait and station. *Id.*

Plaintiff was examined by neurologist Dr. Kautilia Puri on June 14, 2006. *Id.* at 253-56. At that time, Plaintiff complained of low back pain that increased with sitting, lifting, bending, and twisting, and decreased with medications. *Id.* at 253. He also complained of numbness in the left arm and cervical neck pain. *Id.* Plaintiff reported that he was unable to do any household activities, but was able to shower and dress himself. *Id.* at 254. He also reported that he watches television, listens to the radio, and "goes out." *Id.* Upon physical examination, Plaintiff had a normal gait and station, was able to heel-toe walk without difficulty, needed no help changing or getting on and off the examination table, and was able to rise from a chair without difficulty. *Id.* Plaintiff showed a normal range of motion in the thoracic spine; mild decrease in range of motion of the cervical spine; and mild decrease in range of motion of the lumbosacral spine with mild lumbosacral spine tenderness. *Id.* Plaintiff demonstrated no muscle spasm and a straight leg raising test was negative. *Id.* The rest of the physical examination was normal. *Id.* at 255. Dr. Puri recorded that Plaintiff exhibited no objective limitations in gait or activities of daily living upon examination. *Id.*

Dr. Puri completed a medical source statement of ability to do work-related activities, and indicated that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; suffered no limitations on standing, walking, or sitting; and was limited in the upper extremities with regard to pushing and pulling. *Id.* at 257-58. He also opined that Plaintiff could occasionally climb, crawl, and stoop, but never kneel, crouch, or crawl. *Id.* at 258. Plaintiff had an unlimited ability to reach, handle, finger, and feel. *Id.* at 259. He had no communicative or environmental limitations. *Id.* at 259-60.

Dr. John Pramenko filled out a physical capacities evaluation on May 2, 2006. *Id.* at 251-52. It is unclear whether Dr. Pramenko actually examined Plaintiff or simply reviewed the medical

8

records. *See* Def.'s Br. at 14-15. Dr. Pramenko indicated that Plaintiff could sit, stand, and walk for a total of one hour each in an eight-hour workday; must lie down periodically throughout the day to relieve pain; could occasionally lift up to twenty pounds; had limitations in simple grasping, pushing and pulling, and fine manipulation; could not bend, crawl, or climb; and could occasionally squat and reach. *Id.* at 251-52.

A physical residual functional capacity assessment was completed by a state agency physician on December 28, 2004. (T. 200-03). The assessment found that Plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and/or walk for about six hours each in an eight-hour workday; and push and/or pull to the extent indicated by his lifting and carrying restrictions. *Id.* at 200. The findings of Dr. Balagtas' physical examination were noted. *Id.* Plaintiff was found able to occasionally climb, balance, stoop, kneel, crouch, and crawl, and was found to have no manipulative, visual, communicative, or environmental limitations. *Id.* at 202.

## Discussion

11. Plaintiff argues that the opinions of Drs. Salma and Pramenko should have been given controlling weight under the treating physician rule. Pl.'s Br. at 7-9. While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is not required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

If the treating physician's opinion is not given controlling weight, the ALJ must assess the

following factors: the length of the treatment relationship; the frequency of examination for the condition in question; the medical evidence supporting the opinion; the consistency of the opinion with the record as a whole; the qualifications of the treating physician; and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6). Failure to follow the proper standard is a ground for reversal. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998)(citation omitted).

In this case, Plaintiff argues that the ALJ should have afforded controlling weight to Dr. Salma's opinion that Plaintiff was totally permanently disabled. Pl.'s Br. at 7-9. As noted above, this opinion was actually a response to a check-off sheet sent to Dr. Salma by Plaintiff's attorney. Dr. Salma checked boxes indicating that Plaintiff had been under total disability while in her care and that this disability was permanent. (T. at 227).

The "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." *Snell*, 177 F.3d at 133. Thus, a treating physician's disability assessment is not determinative. *Id.* Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In this case, the ALJ considered Dr. Salma's opinion but declined to give it controlling weight, because it represented an opinion on the ultimate issue of disability and because it was inconsistent with Dr. Salma's own treatment notes. (T. 17). The Court agrees with the ALJ's reasoning. Dr. Salma's opinion did not consist of a detailed assessment of Plaintiff's functional capacities, but a simplistic response to a check-off questionnaire which indicated that Plaintiff was

10

permanently totally disabled. *Id.* at 227. No reasoning was given for this conclusion.

Further, Dr. Salma's own treatment notes do not justify a finding that Plaintiff was totally and permanently disabled. On May 30, 2003, Dr. Salma opined that Plaintiff could "work full time [with] limitations," including unspecified limitations on sitting and standing for prolonged periods of time. *Id.* at 249-50. On September 16, 2004, Dr. Salma noted that Plaintiff was not experiencing a lot of back pain. *Id.* at 245. On December 1, 2004, Dr. Salma opined that Plaintiff could work full time in an office-type job with some limitations on lifting. *Id.* at 244. On December 30, 2005, Dr. Salma indicated that Plaintiff had "no acute problems." *Id.* at 229. These treatment notes are inconsistent with an opinion that Plaintiff suffered from a total, permanent disability. Moreover, Dr. Salma's opinion as to Plaintiff's ultimate disability was an issue reserved to the Commissioner, and as such was not entitled to controlling weight. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Plaintiff argues that Dr. Pramenko's opinion regarding Plaintiff's functional capacities should have been given controlling weight. Pl.'s Br. at 7-9. Dr. Pramenko appears to have taken over Dr. Salma's practice, but it is not clear that he actually examined Plaintiff. *See* Pl.'s Br. at 8. Nevertheless, it is clear that Dr. Pramenko never stood in a treatment relationship with Plaintiff; he simply reviewed Dr. Salma's records and gave an opinion on Plaintiff's functional capacities. (T. 251-52). There are no separate treatment notes from Dr. Pramenko in the record. As noted above, Dr. Pramenko indicated that Plaintiff could sit, stand, and walk for a total of one hour each in an eight-hour workday; must lie down periodically throughout the day to relieve pain; could occasionally lift up to twenty pounds; had limitations in simple grasping, pushing and pulling, and fine manipulation; could not bend, squat, or climb; and could occasionally squat and reach. *Id.* at 251-52.

The ALJ considered Dr. Pramenko's opinion, but discounted it because it was inconsistent with the medical record as a whole. *Id.* at 18. For the reasons laid out above, the Court agrees.

11

First, Dr. Pramenko's opinion was inconsistent with Dr. Salma's treatment notes. *Id.* at 229, 244-45, 249-50. It was also inconsistent with other medical evidence of record, which indicated that Plaintiff generally showed a normal gait and station, full strength, and only mildly limited ranges of motion in the lumbar spine area. *Id.* at 171, 196-97, 200-03, 254-55, 257-60. Additionally, because Dr. Pramenko was not a treating source, his opinion was not entitled to controlling weight under the treating physician rule. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).

For the foregoing reasons, the Court finds that the ALJ correctly weighed the opinions of Drs. Salma and Pramenko.

12. Plaintiff argues that the ALJ incorrectly assessed his credibility. Pl.'s Br. at 5-7. It is well settled that "a claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence". *Simmons v. U.S. R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location,

duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence. *See* SSR 96-7p, 1996 WL 374186, at *2.

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Martone v. Apfel*, 70 F. Supp.2d 145, 151 (N.D.N.Y. 1999); *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 220 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987)) (citations omitted). It is insufficient for an ALJ to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible". SSR 96-7p, 1996 WL 374186, at *4 (SSA July 2, 1996). Absent such findings, a remand is required. *Miller v. Shalala*, 894 F. Supp. 73, 75 (N.D.N.Y. 1995); *see also Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("a finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand").

In this case, the ALJ acknowledged that Plaintiff's impairments could reasonably be expected to produce some of the alleged symptoms, but that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (T. 16). The ALJ cited the findings of Drs. Balagtas, Staunton, and Puri, who recorded modest findings on

physical examination including lumbar pain and restricted ranges of motion. *Id.* He also cited Dr. Balagtas' finding that Plaintiff had a normal gait and station; full ranges of motion in the upper extremities, hips, knees, and ankles; full strength throughout; and intact reflexes. *Id.*; *see* T. at 200-03. A report from examining physician Dr. Staunton dated April 2005 found full range of motion of the lower back; negative straight leg raising test; and normal gait and station. *Id.* at 216. X-rays of the right shoulder and cervical spine were negative. *Id.* at 181-72, 174, 184. X-rays of the lumbar spine indicated some disc space narrowing at L5-S1, but disc space height and alignment were maintained, and no fracture or dislocation was evident. *Id.* at 198, 218.

The ALJ also considered that Plaintiff's treatment has been sporadic, with physical therapy taking place in July and August of 2002, one visit to the emergency room in September of 2004, and treatment by Dr. Salma from September 2003 through December 2005. *Id.* at 17. Dr. Salma referred Plaintiff to physical therapy, but nothing in the record indicates that Plaintiff actually participated in such physical therapy. *Id.* The ALJ was entitled to consider Plaintiff's sporadic treatment in coming to his credibility determination. *See, e.g., Martone v. Apfel*, 70 F. Supp.2d 145, 151 (N.D.N.Y. 1999). For the reasons laid out above, the Court concludes that the ALJ properly exercised his discretion in finding Plaintiff not fully credible. The ALJ's reasoning was both properly explained and supported by substantial evidence of record.

13.     After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians, and consultative examiners, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error, and further finds that substantial evidence supports the ALJ's decision.

Accordingly, the Court grants Defendant's Motion for Judgment on the Pleadings and denies Plaintiff's motion seeking the same. Accordingly,

**IT IS HEREBY ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**.

**FURTHER**, that Plaintiff's Motion for Judgment on the Pleadings is denied.

**FURTHER**, that the Clerk of the Court is directed to take the necessary steps to close this case.

**SO ORDERED**.

Dated: September 10, 2008
Albany, New York

_/s/ Victor E. Bianchini_
Victor E. Bianchini
United States Magistrate Judge